IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JERRELLE J., O/B/O** | * | |
| **JANEY J.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| vs. | * | Civil Action No. ADC-20-0167 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| **ADMINISTRATION,[1]** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On January 20, 2020, Jerrelle J. petitioned this Court on behalf of Janey J. ("Plaintiff") to review the Social Security Administration's ("SSA") final decision to deny her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF No. 1 ("the Complaint"). After consideration of the Complaint and the parties' cross-motions for summary judgment (ECF Nos. 15, 17), and the response thereto (ECF No. 18), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2018). For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, and Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED.

### PROCEDURAL HISTORY

On January 13, 2017, Plaintiff filed a Title II application for DIB and Title XVI application for SSI, alleging disability beginning on July 4, 2015. Her claims were denied initially and upon reconsideration on May 18, 2017, and July 15, 2016, respectively. On August

---

[1] Currently, Andrew Saul serves as the Commission of the Social Security Administration.

21, 2017, Plaintiff filed a written request for a hearing and, on September 11, 2018, an Administrative Law Judge ("ALJ") presided over a hearing. On December 20, 2018, the ALJ rendered a decision ruling that Plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act [(the "Act")] from July 4, 2015, through the date of this decision." ECF No. 12-3 at 42. Thereafter, Plaintiff filed an appeal, and on November 22, 2019, the Appeals Council denied Plaintiff's request for review. Thus, the decision rendered by the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481 (2018); *see also Sims v. Apfel*, 530 U.S. 103, 106–07 (2000).

On January 20, 2020, Plaintiff filed the Complaint in this Court seeking judicial review of the SSA's denial of her disability application. On October 1, 2020, Plaintiff filed a Motion for Summary Judgment, and the SSA filed a Motion for Summary Judgment on October 30, 2020. Plaintiff filed a response on December 15, 2020.[2] This matter is now fully briefed, and the Court has reviewed both parties' motions.

## STANDARD OF REVIEW

"This Court is authorized to review the [SSA]'s denial of benefits under 42 U.S.C. § 405(g)." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court, however, does not conduct a *de novo* review of the evidence. Instead, the Court's review of an SSA decision is deferential, as "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g); *see Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests

---

[2] On January 7, 2021, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

with the ALJ, not with a reviewing court."); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) ("We do not conduct a *de novo* review of the evidence, and the [SSA]'s finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence." (citations omitted)). Therefore, the issue before the reviewing court is not whether the plaintiff is disabled, but whether the ALJ's finding that the plaintiff of not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) ("[A] reviewing court must uphold the [disability] determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." (citation and internal quotation marks omitted)).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal citations and quotation marks omitted). "In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations and quotation marks omitted). Therefore, in conducting the "substantial evidence" inquiry, the court shall determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

In order to be eligible for DIB and/or SSI, a claimant must establish that she is under disability within the meaning of the Act. The term "disability," for purposes of the Act, is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant shall be determined to be under disability where "h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows the five-step evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). The evaluation process is sequential, meaning that "[i]f at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments] that meets the duration requirement[.]" 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirement of twelve months, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.909, 416.920(a)(4)(ii), 416.920(c).

At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, then the claimant is considered disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual

alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *2–13 (Oct. 25, 2017). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments he has received for his symptoms, medications, and any factors contributing to functional limitations. *Id.* at *6–8.

At step four, the ALJ considers whether the claimant is able to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still perform past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).

Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. During steps one through four of the evaluation, the claimant has the burden of proof. 20 C.F.R. §§ 404.1520, 416.920; *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Radford*, 734 F.3d at 291. At step five, however, the burden of proof shifts to the ALJ to prove: (1) that there is other work that the claimant can do, given the claimant's age, education, work experience, and RFC (as determined at step four), and; (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see Hancock*, 667 F.3d at 472–73; *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the claimant can perform other work that exists in significant

numbers in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 404.1560(c), 416.920(a)(4)(v). If the claimant cannot perform other work, then the claimant is disabled. *Id.*

## **ALJ DETERMINATION**

In the instant matter, the ALJ preliminarily found that Plaintiff met the insured status requirements of the Act through March 31, 2017. ECF No. 12-3 at 33. The ALJ then performed the sequential evaluation and found at step one that Plaintiff "ha[d] not engaged in substantial gainful activity since July 4, 2015, the alleged onset date." *Id.* At step two, the ALJ found that Plaintiff had severe impairments of "bilateral knee pain with osteonecrosis/avascular necrosis of the bilateral knees; degenerative disc disease of the lumbar spine with left sided radiculopathy and asthma." *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app'x 1. *Id.* at 35. The ALJ then determined that Plaintiff had the RFC:

> [t]o perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift up to 20 pounds occasionally and 10 pounds frequently and can stand or walk for 2 hours in an 8-hour workday and can sit for 6 hours in an 8-hour workday. She can occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She can have occasional exposure to extreme cold, extreme heat, and wetness or humidity. She can have occasional exposure to irritant[s] such as fumes, odors, dusts, gases, and poorly ventilated areas.

*Id.* at 37. Based on the resulting RFC, the ALJ then determined at step four that Plaintiff was unable to perform any past relevant work. *Id.* at 40. Finally, at step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there are jobs that exist

in significant numbers in the national economy that [Plaintiff] can perform." *Id.* at 41. Thus, the ALJ concluded that Plaintiff "ha[d] not been under a disability, as defined in [the Act], from July 4, 2015, through the date of this decision." *Id.* at 42.

## DISCUSSION

Plaintiff argues that the ALJ's decision is not supported by substantial evidence on the record as a whole and raises two specific allegations of error on appeal: (1) that the ALJ failed to properly consider Plaintiff's medical evidence under Listing 1.02 and (2) that the ALJ failed to evaluate Plaintiff's fibromyalgia under SSR 12-2p. Each of Plaintiff's arguments is addressed below.

### A. LISTING 1.02

At step three of the sequential evaluation, the ALJ must determine whether the claimant's impairments meet or equal one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. Where a claimant can show that her condition "meets or equals the listed impairments," the claimant is entitled to a conclusive presumption that she is disabled within the meaning of the Act. *Bowen v. City of New York*, 476 U.S. 467, 471 (1986); *see McNunis v. Califano*, 605 F.2d 743, 744 (4th Cir. 1979) (stating that the listings, if met, are "conclusive on the issue of disability"). The burden of proof is on the claimant to show that she meets *all* of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

"In evaluating a claimant's impairment, an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D.Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). However, "[u]nder *Cook*, the duty of identification of relevant

listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments." *Ketcher v. Apfel*, 68 F.Supp.2d 629, 645 (D.Md. 1999). "Neither the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment." *Id.* On the other hand, "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford*, 734 F.3d at 295 (internal citations omitted).

Remand is appropriate where the "ALJ's opinion failed to apply the requirements of the listings to the medical record." *Id.* at 291–92; *see Fox v. Colvin*, 632 F.App'x. 750, 755–56 (4th Cir. 2015) (holding that the ALJ's conclusory and perfunctory analysis, at step three necessitated remand). In evaluating whether an ALJ's listing comparison was proper, however, the Court is not confined to the ALJ's analysis at step three and instead must consider the reasoning provided by the ALJ in the decision in its entirety. *See Schoofield v. Barnhart*, 220 F.Supp.2d 512, 522 (D.Md. 2002) (holding that remand is not warranted "where it is clear from the record which [L]isting . . . w[as] considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the [s]tep [t]hree analysis which allows [the reviewing] court readily to determine whether there was substantial evidence to support the ALJ's [s]tep [t]hree conclusion").

Here, Plaintiff argues that the ALJ failed to properly evaluate her medical impairments under Listing 1.02. ECF No. 15-2 at 18. Listing 1.02 states:

> 1.02 Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g., subluxation,

> contracture, bony or fibrous ankylosis, instability) and chronic
> joint pain and stiffness with signs of limitation of motion or other
> abnormal motion of the affected joint(s), and findings on
> appropriate medically acceptable imaging of joint space narrowing,
> bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e.,
> hip, knee, or ankle), resulting in inability to ambulate effectively,
> as defined in 1.00B2b; [3]

20 C.F.R. pt. 404, subpt. P, app. 1, 1.02. During his step three analysis, the ALJ explained why

Plaintiff failed to meet the requirements of Listing 1.02:

> Despite the [Plaintiff's] decision to start using a cane and/or
> walker, there is no evidence to show etiology for the [Plaintiff's]
> knee pain or alleged inability to ambulate effectively. There were
> no clinical abnormalities or gross anatomical deformities present;

---

[3] Listing 1.00(B)(2)(b) defines an inability to ambulate effectively as follows:

> (1) Definition. Inability to ambulate effectively means an extreme
> limitation of the ability to walk; i.e., an impairment(s) that interferes
> very seriously with the individual's ability to independently initiate,
> sustain, or complete activities. Ineffective ambulation is defined
> generally as having insufficient lower extremity functioning (see
> 1.00J) to permit independent ambulation without the use of a hand-
> held assistive device(s) that limits the functioning of both upper
> extremities...
>
> (2) To ambulate effectively, individuals must be capable of
> sustaining a reasonable walking pace over a sufficient distance to be
> able to carry out activities of daily living. They must have the ability
> to travel without companion assistance to and from a place of
> employment or school. Therefore, examples of ineffective
> ambulation include, but are not limited to, the inability to walk
> without the use of a walker, two crutches or two canes, the inability
> to walk a block at a reasonable pace on rough or uneven surfaces,
> the inability to use standard public transportation, the inability to
> carry out routine ambulatory activities, such as shopping and
> banking, and the inability to climb a few steps at a reasonable pace
> with the use of a single hand rail. The ability to walk independently
> about one's home without the use of assistive devices does not, in
> and of itself, constitute effective ambulation.

> therefore, the [Plaintiff's] impairment does not amount to listing level.

ECF No. 12-3 at 35-36. The ALJ's reasoning appropriately outlined the symptoms required by Listing 1.02 and identified listed symptoms not supported by Plaintiff's medical record.

Plaintiff cites *Hambleton* for the argument the ALJ erred in his evaluation of Plaintiff's medical impairments because instead of describing the medical evidence that directly contradicts his conclusion, the ALJ "simply and erroneously asserted an absence of evidence" as an explanation. ECF No. 15-2 at 13 (quoting *Hambleton v. Comm'r of Soc. Sec.*; Civil No. SAG-15-2897 (D.Md. September 15, 2016)). Plaintiff alleges first that "the ALJ failed to provide an explanation for why he believed that there is no evidence to show etiology for the claimant's knee pain or alleged inability to ambulate effectively." ECF No. 15-2 at 13 (internal quotation omitted). This argument is unsupported by the record evidence.

The ALJ cited multiple exhibits in the record to support his findings and the ALJ explained his reasoning in the step three and step four discussions. Addressing the Listing 1.02 criteria which requires "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)," the ALJ stated:

> Treatment notes show that on July 4, 2015 the [Plaintiff] reported sudden bilateral leg pain after a flight from Florida and stating that her leg gave way causing her to collapse. Treatment notes from Johns Hopkins Hospital dated September 22, 2015 also show the [Plaintiff] walked gingerly with a cane but had a generally normal physical exam of her knee, no pain with hip extension and her knees were without effusions, warmth, or swelling…Despite alleged knee pain radiating to her calves and pain in the bilateral hips, a July 10, 2015 physical exam revealed 5/5 lower extremity bilaterally, minimal pain with internal and external rotation of bilateral lower extremities, and her sensation was intact with normal knee X-ray findings. The [Plaintiff's] August 28, 2015 musculoskeletal exam was normal…[Plaintiff's] March 18, 2016 MRI showed bone infarcts with no joint collapse. A July 28, 2016

> MRI was normal with knee joint space maintained without evidence of fracture or subluxation; there was no bone destruction identified and no joint effusion or opaque intraarticular osteochondral fragments seen.

*Id.* at 38 (internal record citations omitted). Further, the ALJ stated that Plaintiff "has not presented any medical opinion evidence supporting her need for a cane or walker in order to ambulate." *Id.* at 40. Because there is no factual or medical support for Listing 1.02A, the ALJ was not required to compare the medical evidence of record to the criteria of that Listing. *See Huntington*, 101 F.Supp.2d at 391–92. Accordingly, the Court finds no merit in Plaintiff's contention that the ALJ erred by failing to find that she met Listing 1.02A.

### B. FIBROMYALGIA

Plaintiff also argues that the ALJ erred at step-two of the sequential evaluation process because "given the validity of [Plaintiff's] fibromyalgia diagnosis, the ALJ materially erred by failing to consider her fibromyalgia pursuant to SSR 12-2p." ECF No. 15-2 at 20. This argument is also without merit.

At step two of the sequential evaluation, the claimant must demonstrate that she has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Bowen*, 482 U.S. at 146 n.5 (stating that the claimant bears the burden of showing that he has a "severe" impairment). An impairment or combination thereof is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). This step is not "satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985). "[W]hen assessing the severity of whatever impairments an individual may have, the adjudicator must assess the impact of the combination of those impairments on the person's

ability to function, rather than assess separately the contribution of each impairment to the restriction of his or her activity as if each impairment existed alone." *Id.*

SSR 12-2p "provides guidance on how [the ALJ] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [the ALJ] evaluate[s] [fibromyalgia] in disability claims and continuing disability reviews under Titles II and XVI of the [Act]." SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). SSR 12–2p uses two sets of criteria for diagnosing fibromyalgia—the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. *Id.* at *2–3. The 1990 criteria require a history of widespread pain, at least 11 tender points, and evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* The 2010 criteria require a history of widespread pain, repeated manifestations of six or more fibromyalgia signs, symptoms, or co-occurring conditions (including fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome), and evidence that other disorders that could cause the symptoms or signs were excluded. *Id.* at *3.

When a claimant seeks a disability finding based in whole or in part on fibromyalgia, Social Security Ruling ("SSR") 12-2p instructs that the ALJ must properly consider the claimant's symptoms. 2012 WL 3104869, at *2 (July 25, 2012). A claimant's allegation of fibromyalgia must be analyzed at each step of the sequential evaluation process, like any other impairment. *Id.* at *5–6; *see also Exum v. Astrue*, SAG-11-2073, 2012 WL 5363445, at *2 (D.Md. Oct. 26, 2012) (finding that the ALJ's failure to classify plaintiff's fibromyalgia as severe "infected" the ALJ's subsequent analysis, particularly the RFC finding that "reports of pain exceed the objective findings" when fibromyalgia could have explained the discrepancy).

Furthermore, when an ALJ fails to classify a plaintiff's impairment as either severe or non-severe, and does not discuss this omission, the ALJ has committed a reversible error. *Boston v. Barnhart*, 332 F.Supp.2d 879, 885 (D.Md. 2004) (finding that the ALJ erred "by failing to explain why she did not consider obesity an impairment, severe or not severe, at step two, and failed to consider the plaintiff's obesity at the remaining steps").

The ALJ addressed Plaintiff's claims of fibromyalgia, stating:

> The [Plaintiff's] rheumatologist reported that [Plaintiff] did not quite meet the 1990 criteria (with only 9 of the required 11 out of 18 tender points) however, based on the 1990 criteria and 2011 modification, 13 or more points of 31 is consistent with fibromyalgia, but the [Plaintiff] had no positive findings.

ECF No. 12-3 at 38. The ALJ articulated that the finding was consistent only with the 2011 modification to explain why he did not consider Plaintiff's fibromyalgia a severe impairment. As noted, the plaintiff must demonstrate that she has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Bowen*, 482 U.S. at 146 n.5 (stating that the claimant bears the burden of showing that he has a "severe" impairment). The ALJ determined that Plaintiff did not meet her burden. In fact, Defendant highlights that multiple times throughout the record, Plaintiff denied having fibromyalgia. ECF No. 17-1 at 20. Therefore, the ALJ properly considered Plaintiff's medical evidence and reported symptoms associated with her fibromyalgia. Accordingly, Plaintiff's claims are DENIED.

## CONCLUSION

In summation, the Court finds that the ALJ properly found that Plaintiff was "not disabled" within the meaning of the Act from July 4, 2015, through the date of his opinion. Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Therefore, based on the

foregoing, Plaintiff's Motion for Summary Judgment (ECF No. 15) is DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) is GRANTED, and the decision of the SSA is AFFIRMED. The clerk is directed to CLOSE this case.

Date: 4 February 2021

A. David Copperthite
United States Magistrate Judge